Lloyd E. **BAKER** and Eloise L. Baker,
Plaintiffs–Appellants,

v.

Robert **WADE** and Norma Wade, d/b/a
AAA Marine Sales and Service,
Defendants–Respondents.

No. 20585

Missouri Court of Appeals,
Southern District,
Division Two.

May 29, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Dennis J.C. Owens, Kansas City, for plaintiffs-appellants.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, Andrew J. Hager, Jr., Mt. Vernon, for defendants-respondents.

SHRUM, Judge.

This is a contract case where Plaintiffs filed a six-count petition alleging that a boat they purchased from Defendants was not new as was represented to them. The trial court awarded Plaintiffs $1,420.45 on their "breach of express warranty" claim (Count I) but denied all other counts.

Plaintiffs appeal only that part of the judgment that denied them relief under Count VI of their petition. Their sixth count sought recission of the purchase contract or, alternatively, refund of the purchase price pursuant to § 400.2–602 or § 400.2–608 of Missouri's Uniform Commercial Code (U.C.C.). We affirm.

## FACTS

In 1989, Lloyd and Eloise Baker (Plaintiffs) purchased a boat and trailer for $13,400 from Robert and Norma Wade (Defendants). This transaction prompted litigation in which Plaintiffs alleged that the boat was not in a new condition as it was represented to be. In Count I, styled as "Breach of Express Warranty," Plaintiffs alleged some twenty-two defects in the goods that indicated the boat and trailer were not new. The prayer for relief in Count I was for damages of $10,600.

In Count VI, denominated "Recision" [sic], Plaintiffs pled in paragraph 2 what we discern to be a claim for equitable rescission of the purchase contract. Additionally, in paragraphs 3 and 4 of Count VI, Plaintiffs alleged that they had timely rejected the boat under § 400.2–602 or, in the alternative, revoked their acceptance of the boat under § 400.2–608. The prayer for relief in Count VI was for the Court to "set aside, cancel, annul and rescind the agreement to purchase said boat and motor" and order refund of the purchase price of the boat, i.e., $13,400.

Following a bench trial, the court entered the $1,420.45 judgment for Plaintiffs on Count I but denied them relief on all other counts.

On appeal, Plaintiffs make no complaint about that part of the judgment that awarded them $1,420.45. Instead, their single point maintains:

"The trial court erred by failing to rescind the contract because the weight of the evidence clearly indicated [Plaintiffs'] actions in attempting to return the boat and obtain a refund of the purchase price constituted either a rejection of the goods under § 400.2–601 ... or a revocation of acceptance under § 400.2–608 ..., thereby entitling [Plaintiffs] to an award of recision [sic] of the contract and the refund of their entire purchase price."

Under the U.C.C., the right of the buyer to refuse goods which do not conform to the contract for sale is defined in terms of rejecting the seller's tender, § 400.2–601,[1] and of revoking the acceptance of goods after they have been accepted, § 400.2–608.[2] *See* 4 ANDERSON ON THE UNIFORM COMMERCIAL CODE, § 2–601:3, at 71–72 (3d ed.1997). Where a buyer rightfully rejects or justifiably revokes acceptance of goods and then cancels the contract, such buyer is entitled to recover so much of the purchase price as has been paid. § 400.2–711. *See Hollingsworth v. The Software House, Inc.,* 32 Ohio App.3d 61, 513 N.E.2d 1372, 1378 (1986).

Plaintiffs maintain that the evidence in this case compels a finding that they rightfully rejected the boat or justifiably revoked any acceptance thereof and that they cancelled the contract. With that as their premise, Plaintiffs argue that they were entitled to a judgment under Count VI for the full purchase price and the trial court erred when it denied Count VI. Fatal to this argument, however, is the fact that Plaintiffs were awarded damages under Count I for breach of express warranty and are thus assured of

---

1. § 400.2–601 reads: "[I]f the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may
    (a) reject the whole; or
    (b) accept the whole; or
    (c) accept any commercial unit or units and reject the rest."

2. In part, § 400.2–608 reads:
    "(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) without discovery of such conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
    "(2) Revocation of acceptance must occur within a reasonable time. ...
    "(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

relief for Defendants' breach of the sales contact.

■ A buyer may seek damages for breach of contract under § 400.2–714 or may exercise the self-help remedy of rejection, but not both. *Davis Industrial Sales Inc. v. Workman Construction Co.*, 856 S.W.2d 355, 362[6] n. 6 (Mo.App.1993). Damages recoverable for breach of warranty are mutually exclusive of the remedies that are available where there has been a rejection of the goods or a revocation of acceptance. *Hospital Computer Systems v. Staten Island Hosp.*, 788 F.Supp. 1351, 1362 (D.N.J.1992) (citing J. WHITE AND R. SUMMERS, UNIFORM COMMERCIAL CODE, § 10–1 at 375 (2d ed.1980)). *See Desilets Granite Co. v. Stone Equalizer Corp.*, 133 Vt. 372, 340 A.2d 65, 67 (1975); *Gawlick v. American Builders Supply*, 86 N.M. 77, 519 P.2d 313, 314 (App.1974). *See also* ANDERSON, § 2–602:5 at 115.

Section 400.2–714 clarifies why the remedy of damages for breach of warranty is inconsistent with the remedy of rejection or revocation of acceptance under the U.C.C. In pertinent part, § 400.2–714 reads:

"(1) *Where the buyer has accepted goods* . . . he may recover as damages for any non-conformity. . . .

"(2) *The measure of damages for breach of warranty* is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . ." (emphasis added).

The U.C.C. comment following § 400.2–714 says: "1. This section deals with the remedies available to the buyer after goods have been accepted. . . ." Comment 3 discusses the remedy of breach of warranty. The language of this provision and the comments that follow make it clear that damages for breach of warranty are only available to a buyer who has accepted goods. *See* WHITE AND SUMMERS, § 10–1 at 551 (4th ed.1995). It is equally clear that the remedy of rejection or revocation of acceptance of goods, which requires Buyer to cancel the contract, is wholly inconsistent with the remedy of damages for breach of contract which requires acceptance of the contract. This analysis of U.C.C. provisions is consistent with the general rule involving equitable rescission which states that a party "may not at the same time successfully pursue both the remedy of rescission and that of an action for damages as they are inconsistent, the first resting upon a disaffirmance and the second resting upon an affirmance of the contract." *Mills v. Keasler*, 395 S.W.2d 111, 116[3] (Mo. 1965).

In *Alexander v. Link's Landing, Inc.*, 814 S.W.2d 614 (Mo.App.1991), a buyer sued the firm that sold him a boat. In a multiple count petition, buyer sought rescission of the contract (Counts I and II) and damages for conversion (Count III). A judgment for $10 actual damages and $500 punitive damages was entered on the buyer's conversion claim but his claim for rescission was denied. The buyer appealed. After this court rejected the buyer's claim that the damages were inadequate, we held that he could not seek reversal of that part of the judgment denying the rescission claim.

"[P]laintiff's claim for rescission and his conversion claim are inconsistent.

"Where a party has a right to pursue one of two inconsistent remedies, makes his election, institutes suit and prosecutes it to final judgment, or receives something of value on the claim, he cannot thereafter pursue another and inconsistent remedy.

"Here, plaintiff prosecuted his conversion claim to final judgment and received an award of $10 nominal and $500 punitive damages. . . . We have rejected plaintiff's complaints that he should have been granted more actual damages. . . . That being so, plaintiff is assured a money judgment on Count III of his first amended petition. . . . *Having won that relief, we hold plaintiff cannot seek reversal of that portion of the judgment denying the rescission claim and pursue it anew on remand.* Consequently, we need not, and do not, decide whether the trial court erred in failing to hold plaintiff never became owner of the Trojan boat. Plaintiff's third point is moot."

*Id.* at 620–21 (emphasis added) (citations omitted).

In this analogous situation where Plaintiffs are assured of a money judgment on Count I of $1,420.45, we hold that they cannot seek reversal of that portion of the judgment denying them a remedy on the theory they rejected or revoked acceptance of the boat.

In reaching this conclusion, we do not ignore Plaintiffs' argument that *Alexander* is factually distinguishable from their case. They say that "[t]he plaintiff [in *Alexander*] made his election in the circuit court and then ... pursued three contradictory points on appeal; two were damage claims and the other was a rescission of contract claim." Plaintiffs maintain that in contrast to *Alexander* they never elected a remedy in circuit court. They aver that the trial judge chose the damage remedy for them and that he erred in doing so. Continuing, Plaintiffs claim they are entitled to elect the remedy of recission before this court and that they made that election when they appealed only that part of the judgment that denied the rescission.

This argument fails for several reasons. First, this very issue was addressed in *Trien v. Croasdale Constr. Co.*, 874 S.W.2d 478 (Mo.App.1994). The trial court directed a verdict against plaintiffs on their rescission count after plaintiffs refused to elect between their claims for rescission and damages. *Id.* at 481. The court of appeals affirmed. The two remedies, it said, "present a classical case of irreconcilable inconsistency." *Id.* Hence, the trial court did the best it could when plaintiffs refused to elect:

"In our case, the defendant at the close of all the evidence orally moved that plaintiffs be required to elect as between the damages remedy for breach of warranty, and the rescission remedy. Plaintiffs insisted upon their right to the rescission submission as well as the breach of warranty submissions. The court thereupon directed a verdict for defendant on the rescission count. *Upon the plaintiffs' failure to make an election, the court did the practical thing; it made the election for plaintiffs, and directed a verdict against the plaintiffs on the rescission count.*

"We hold that the court was not in error in directing a verdict against plaintiffs and for the defendant on the rescission count." *Id.* (emphasis added) (citations omitted).

Second, Plaintiffs misread *Alexander.* Contrary to what Plaintiffs say, the appellant in *Alexander* did not elect a remedy before the case was submitted to the trial judge, but rather all counts were submitted to the judge who then entered a judgment granting relief on one count and denying relief on all alternative counts. 814 S.W.2d at 616. In that respect, *Alexander* is factually the same. Third, in *Alexander* the plaintiff appealed from the entire judgment, whereas in this case Plaintiffs only appeal from the denial of their rescission claim. Here, Plaintiffs left unappealed that part of the judgment assuring them damages for their injury, thus raising the prospect of double recovery from a single injury if we reversed that part of the judgment denying the rejection/revocation of acceptance claim. The purpose of the doctrine of election of remedies is to avoid double satisfaction for the same loss. *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d, 504, 506[1] (Mo.banc 1993). Fourth, Plaintiffs' argument that they can initially elect a remedy before this court is made without citation to authority and is illogical. *Alexander* teaches otherwise. The same may be said about Plaintiffs' additional argument that the trial court erred in selecting the remedy. *See Trien*, 874 S.W.2d at 481. We remain persuaded that Plaintiffs' single point on appeal is moot. *See Alexander*, 814 S.W.2d at 621.

The judgment is affirmed.

PARRISH, J., concurs in separate opinion

MONTGOMERY, C.J., concurs

PARRISH, Judge, concurring.

I concur. I write separately to emphasize the need to timely make election of inconsistent remedies.

In this case, at the close of all the evidence, procedures were established permitting the parties to submit written suggestions for the trial court's consideration in deciding the case. Defendants' attorney, ap-

parently recognizing the plaintiffs' obligation to elect among inconsistent remedies they pleaded, suggested that plaintiffs file their suggestions first. Defendants' attorney told the trial court, "I need to see which theory he's going [sic] and which theory he's abandoning and then I'll do something later."

The trial court established a time for plaintiffs to file suggestions and allowed defendants "a week thereafter" to respond. However, the record on appeal does not reveal an election of remedies was made.

When inconsistent remedies are pleaded, parties and the courts in which such actions are filed should take reasonable steps to assure the applicable party elects the remedy the party wishes to pursue. Otherwise, as is evidenced in *Trien v. Croasdale Const. Co.*, 874 S.W.2d 478 (Mo.App.1994), and *Alexander v. Link's Landing, Inc.*, 814 S.W.2d 614 (Mo.App.1991), cited in the principal opinion, confusion abounds. As suggested in *Buss v. Horine*, 819 S.W.2d 762, 767 (Mo.App.1991), failure to grant a motion to require an election can be error. Confusion can be avoided by requiring that a timely election of remedies be made. *Id.* That was not done in this case.